1

UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF ILLINOIS

2

3    UNITED STATES OF AMERICA,           )
                                         )
4                    Plaintiff,          )
     V.                                  )   No. 3:19-cr-30046-SMY-1
5                                        )
     JOSHUA P. BRECKEL,                  )
6                                        )
                     Defendant.          )
7

8            TRANSCRIPT OF PLEA TO INFORMATION

9        BEFORE THE HONORABLE STACI M. YANDLE
             UNITED STATES DISTRICT JUDGE
10
                    April 9, 2019
11

12

13   APPEARANCES:

14   FOR PLAINTIFF:        George A. Norwood, Esq.
                           OFFICE OF U.S. ATTORNEY
15                         402 West Main Street, Suite 2A
                           Benton, Illinois  62812
16                         (618) 439-3808
                           George.Norwood@usdoj.gov
17
     FOR DEFENDANT:        Jessica J. Koester, Esq.
18                         LAW OFFICE OF JESSICA KOESTER, LLC
                           201 Hillsboro Avenue, Suite G
19                         Edwardsville, Illinois  62025
                           (618) 692-4900
20                         jessica@koester-law.com

21   REPORTED BY:          Christine Dohack LaBuwi, RDR, CRR
                           Official Court Reporter
22                         301 West Main Street
                           Benton, Illinois  62812
23                         (618) 439-7725
                           Christine_Dohack@ilsd.uscourts.gov
24
     Proceedings recorded by mechanical stenography, produced by
25   computer-aided transcription.

1          (Proceedings began in open court at 11:31 a.m.)

2          THE CLERK:   The Court calls *United States of*

3    *America versus Joshua P. Breckel*.   This matter is called

4    for a plea to Information.

5          Would the parties please state your presence for

6    the record?

7          MR. NORWOOD:   Good morning, Your Honor.   The United

8    States is ready through George Norwood, Assistant United

9    States Attorney.   I am substituting for Chris Hoell this

10   morning.

11         THE COURT:   Good morning, Mr. Norwood.

12         MS. KOESTER:   Good morning, Your Honor.   Jessica

13   Koester for Mr. Breckel, who is also present in person.

14         THE COURT:   Good morning, Miss Koester.

15         Good morning, Mr. Breckel.

16         It's my understanding we are doing a plea to

17   Information with a Plea Agreement and Stipulation of Facts.

18         Is that correct?

19         MR. NORWOOD:   That's my understanding, Your Honor.

20         MS. KOESTER:   Yes, Your Honor.

21         THE COURT:   And this is a 11(c)(1)(C) Plea

22   Agreement; correct?

23         MR. NORWOOD:   Yes.

24         MS. KOESTER:   Yes.

25         THE COURT:   Okay.   All right.   Would you and your

1   client please approach the podium?

2       Mr. Breckel, could you please raise your right hand

3   and be sworn by the clerk?

4       (Defendant sworn by clerk.)

5                       JOSHUA P. BRECKEL,

6   having been first duly sworn, was examined and testified as

7   follows:

8                           EXAMINATION

9   BY THE COURT:

10  Q.      Would you please state your full name for the

11  record?

12  A.      Joshua Paul Breckel.

13  Q.      All right.

14      THE COURT:  Miss Koester, could you just position

15  that microphone so he doesn't have to lean forward and I

16  can pick him up?  Thank you.

17  Q.      (BY THE COURT)  How old are you, sir?

18  A.      20 years old, Your Honor.

19  Q.      All right.  Mr. Breckel, what is the extent of your

20  education?

21  A.      Associate Degree.

22  Q.      Okay.  I take it then that you can read, write, and

23  understand the English language?

24  A.      Yes, Your Honor.

25  Q.      All right.  Mr. Breckel, have you taken any type of

1    medication or drugs in the last 24 hours?

2    A.      I have -- antidepressants.

3    Q.      Okay.  And as you stand there right now, is that

4    medication affecting in any way your ability to think

5    clearly or understand what we're doing this morning?

6    A.      No, Your Honor.

7    Q.      Have you consumed any alcohol in the last 24 hours?

8    A.      No, Your Honor.

9    Q.      Is there anything, Mr. Breckel, that's stopping you

10   from being able to, again, think clearly and understand the

11   proceedings today?

12   A.      No, Your Honor.

13   Q.      All right.  Now, have you been provided with a copy

14   of the written charges against you, that is, the

15   Information in this case?

16   A.      Yes, Your Honor.

17   Q.      And have you had, sir, a sufficient opportunity to

18   discuss the Information and your case in general with your

19   attorney Miss Koester?

20   A.      Yes, Your Honor.

21   Q.      Are you fully satisfied with the counsel,

22   representation, and advice your attorney has provided you

23   in this case?

24   A.      Yes, Your Honor.

25   Q.      All right.  It's been alleged, Mr. Breckel, in the

1    Information that you committed the following offenses in

2    violation of federal law:

3         In Counts 1, 3, 5, 7, and 8, production of child

4    pornography;

5         In Counts 2, 6, and 10, interstate communications

6    with intent to extort;

7         In Count 4, the distribution of child pornography;

8    and

9         In Count 9, interstate communications with intent

10   to extort.

11        Now, do you understand all of those charges against

12   you?

13   A.    Yes, Your Honor.

14   Q.    All right.  And do you understand that you have in

15   fact been charged with committing a felony?

16   A.    Yes, Your Honor.

17   Q.    Would you like for me, sir, to read the Information

18   for you or will you waive the reading of the Information in

19   this case?

20   A.    I'll waive the reading, Your Honor.

21   Q.    Okay.  Sir, the penalties associated with the

22   charges in the Information, in other words, the penalties

23   that can be imposed upon either a plea or finding of guilty

24   as to Counts 1, 3, 5, 7, and 8 of the Information is a term

25   of imprisonment of no less than 15 years and no more than

1    30 years; no less than three years of supervised release

2    and no more -- well, no less than three years of supervised

3    release, and that's to life; a fine of up to $250,000; and

4    a Special Assessment of $100 per count.

5         As to Counts 2, 6, and 10 of the Information.  The

6    penalties associated with those charges is no more than two

7    years of imprisonment; no more than three years of

8    supervised release; a fine of up to $250,000; and a Special

9    Assessment of $100 per count.

10        As to Count 4.  The penalties associated with that

11   offense is no less than five years but no more than 20

12   years; no less than five years of supervised release, up to

13   life; a fine of $250,000; and a Special Assessment of $100.

14        And finally, as to Count 9 of the Information.  The

15   penalties associated with that charge are no more than five

16   years of imprisonment; no more than three years of

17   supervised release; a fine of up to $250,000; and a

18   100-dollar Special Assessment.

19        Do you understand, sir, those penalties as I have

20   explained them?

21   A.       Yes, Your Honor.

22   Q.       Now, in terms of supervised release.  Any terms and

23   conditions of supervised release that I impose at the time

24   of sentencing, if upon your release you were to violate any

25   of those terms and conditions, your supervision could be

1    revoked and you could be sent back to prison.  Do you

2    understand that?

3    A.       Yes, Your Honor.

4    Q.       All right.  Mr. Breckel, at this point do you have

5    any questions at all either for your attorney or for the

6    Court regarding the nature of the charges against you or

7    the allegations against you and the possible penalties?

8    A.       No, Your Honor.

9    Q.       All right.  Then let me explain your rights to you:

10            Sir, you have a constitutional right to be charged

11   by Indictment of a grand jury, but you can waive that right

12   and consent to being charged by Information of the United

13   States Attorney.  Unless you waive Indictment, you may not

14   be charged with a felony until a grand jury finds by a

15   return of an Indictment that there is probable cause to

16   believe that a crime has been committed and that you

17   committed it.  If you do not waive Indictment, the

18   Government will present this case to a grand jury and

19   request that it indict you.

20            The grand jury, sir, is composed of at least 16 and

21   not more than 23 people, and at least 12 grand jurors must

22   find that there is probable cause to believe that you

23   committed the crimes for which you are charged before you

24   may be indicted.  The grand jury may or may not indict you.

25   If you waive Indictment by the grand jury of this case,

1    we'll proceed against you just as though you had been

2    indicted.

3           Do you understand those rights?

4    A.     Yes, Your Honor.

5    Q.     This charge again is being brought by Information

6    of the United States Attorney.  Have you discussed the

7    matter of waiving an Indictment by a grand jury with your

8    attorney Miss Koester?

9    A.     Yes, Your Honor.

10   Q.     And do you understand your right to an Indictment

11   by a grand jury?

12   A.     Yes, Your Honor.

13   Q.     Sir, have any threats or promises been made to you

14   to induce you to waive Indictment in this case?

15   A.     No, Your Honor.

16   Q.     And do you wish to actually waive Indictment by a

17   grand jury?

18   A.     Yes, Your Honor.

19   Q.     All right.

20          THE COURT:  Miss Koester, do you know of any reason

21   why your client should not waive Indictment in this case?

22          MS. KOESTER:  No, Your Honor.

23          THE COURT:  All right.  I have a written Waiver

24   that needs to be executed.

25          (Waiver signed at this time.)

1    Q.      (BY THE COURT)  Mr. Breckel, I have been provided

2    with a signed Waiver of Indictment.  And before I execute

3    it on behalf of the Court, did you have any problems with

4    understanding the terms of this Waiver as I have explained

5    it, and the little bit that's in the writing, before you

6    signed it?

7    A.      No, Your Honor.

8    Q.      Okay.  So, you are clear on the Waiver?

9    A.      Yes, Your Honor.

10   Q.      All right.

11          THE COURT:  The Court finds that this defendant has

12   knowingly, voluntarily, and competently waived Indictment

13   by the grand jury and the Court hereby accepts the Waiver

14   and this case will proceed against this defendant on the

15   Information filed by the United States.

16   Q.      (BY THE COURT)  Now, Mr. Breckel, I have previously

17   advised you of the charges against you, and I have

18   explained your rights and the possible penalties that can

19   be imposed by a plea or finding of guilty.  It's my

20   understanding that you wish to actually plead guilty to

21   Counts 1 through 10 of the Information by virtue of a Plea

22   Agreement, I believe; is that correct?

23   A.      Yes, Your Honor.

24   Q.      So, let me explain your rights in that regard:

25          You are innocent, sir, until proven guilty;

1      You need to be proven guilty beyond a reasonable
2 doubt;

3      You have a right, sir, to a jury trial;

4      You have a right to confront your accusers;

5      You have a right to bring in witnesses to testify
6 on your own behalf; and

7      You have a right against self-incrimination, which
8 means you don't have to testify unless you choose to do so;
9 and

10      You have a right to have an attorney present with
11 you at each stage of these proceedings.

12      Do you understand those rights?

13 A.      Yes, Your Honor.

14 Q.      All right.  Mr. Breckel, I have been provided with
15 the Plea Agreement in this case and I have had a chance to
16 review it.  Did you in fact have a sufficient opportunity
17 to read and review the Plea Agreement with Miss Koester
18 before you signed it?

19 A.      Yes, Your Honor.

20 Q.      All right.  And do you understand that, at least at
21 this point, I am not bound by the Plea Agreement; do you
22 understand that?

23 A.      Yes, Your Honor.

24 Q.      All right.

25      (In compliance with AO policy, sidebar portion of

1     *proceedings is excerpted and filed under separate*

2     *cover.)*

3          THE COURT:  Mr. Norwood, what are the essential

4     terms of the Plea Agreement in this case?

5          MR. NORWOOD:  Your Honor, with respect to the Plea

6     Agreement.  It is a Plea Agreement under 11(c)(1)(C) of the

7     Federal Rules of Criminal Procedure.

8          The parties agree that the appropriate sentence of

9     imprisonment to be imposed considering all of the factors,

10    including the factors in Title 18 United States Code,

11    Section 3553(a), is a term of imprisonment of 35 years,

12    which is 420 months, to be followed by a lifetime of

13    supervised release.

14         The defendant understands that if the Court accepts

15    this Plea Agreement, it will be bound to impose the 35-year

16    -- that is, the 420-month -- prison sentence and lifetime

17    supervised release.

18         The parties agree that the defendant shall be

19    sentenced to 30 years' imprisonment on Counts 1, 3, 5, 7,

20    and 8, the production of child pornography counts, and that

21    all the terms of imprisonment shall run concurrent with

22    each other.

23         With respect to Count 2, the distribution of child

24    pornography.  The parties agree that the defendant shall be

25    sentenced to five years' imprisonment to run consecutive to

1    the 30 years' imprisonment on Counts 1, 3, 5, 7, and 8.

2          The parties further agree that the defendant shall

3    be sentenced to two years' imprisonment on Counts 2, 6, and

4    10, interstate extortion, to run concurrent to all other

5    counts.

6          Finally, the defendant and Government agree that

7    the defendant shall be sentenced to five years'

8    imprisonment on Count 9, internet extortion with threats,

9    to run concurrent to all other counts.

10          This will result in a total sentence of 420 months'

11    imprisonment followed by lifetime supervised release.

12          The defendant understands that the Court did not

13    participate in this agreement and that the Court may accept

14    or reject the agreement, or may defer its decision as to

15    the acceptance or rejection until there has been an

16    opportunity for the Court to consider a presentence report.

17          The defendant will not be able to withdraw his plea

18    of guilty once entered, except as provided under Federal

19    Rule of Criminal Procedure 11(d)(2)(A).

20          Again, the defendant agrees to a sentence of

21    imprisonment of 420 months and lifetime supervised release.

22          And the guideline calculations are in the Plea

23    Agreement.

24          The defendant is also waiving a number of his

25    rights.  He is waiving his right to appeal and/or

1   collaterally attack his conviction and/or sentence in all

2   respects, except as specifically limited in the Plea

3   Agreement.  Those exceptions to his waiver of appeal and

4   collateral attack are in writing and are specifically

5   delineated in the Plea Agreement.

6            In addition, there is a forfeiture of certain

7   assets.  Those assets are delineated in the Plea Agreement.

8            Finally, the defendant understands there are

9   collateral consequences of his conviction, including the

10  requirement to register as a sex offender upon release from

11  imprisonment.

12           And those are the basic terms of the Plea

13  Agreement, Your Honor.

14           THE COURT:  Okay.

15  Q.       (BY THE COURT)  Mr. Breckel, are those the terms,

16  the basic or essential terms of the Plea Agreement that you

17  are entering into with the Government as you understand

18  them?

19  A.       Yes, Your Honor.

20  Q.       Sir, have any threats or promises been made to you

21  or against you in an effort to somehow force you or induce

22  you to plead guilty in this case?

23  A.       No, Your Honor.

24  Q.       Again, is your intent to plead guilty based on your

25  own free and voluntary act?

1    A.       Yes, Your Honor.

2    Q.       Okay.  Do you understand, sir, that if I ultimately

3    accept your plea in this case, that you will not be

4    permitted to withdraw it?

5    A.       Yes, Your Honor.

6    Q.       In terms of, there are certain waivers, I believe,

7    in the Plea Agreement.  Did you specifically have a chance

8    to talk to Miss Koester about the -- your waivers of -- or

9    the waiver of your rights to appeal and collateral attack

10   rights?

11   A.       Yes, Your Honor.

12   Q.       Okay.  And as far as sentencing.  Again, have you

13   had a chance to talk to Miss Koester about the federal

14   sentencing guidelines and the statutory factors set forth

15   at 18 U.S.C., Section 3553(a), related to sentencing?

16   A.       Yes, Your Honor.

17            THE COURT:  Mr. Norwood, what's the factual basis

18   in this case?

19            MR. NORWOOD:  Your Honor, if this matter were to

20   proceed to a trial, the Government would put on the

21   following evidence to prove the defendant's guilt beyond a

22   reasonable doubt:

23            The Government would show that beginning in early

24   2016 and continuing until the defendant's arrest on July 8,

25   2018, the defendant contacted dozens of minor females

throughout the United States and internationally, via a
variety of social media platforms and messaging
applications such as Facebook, Instagram, MeetMe, LiveMe,
Kik, and Snapchat.

Using false identities and user names, the
defendant obtained sexually explicit images and videos from
dozens of minor females by a variety of methods, and that
included purchasing the images from the minors, pretending
to enter into an online romance with the minors, and/or
threatening the minors.  The defendant frequently asked the
minors to include their face in the photos and videos or to
hold up three fingers so he knew it was them in the images.

Once the defendant had obtained, initially,
sexually explicit images from the minors, he extorted and
blackmailed many of them by threatening to send the images
to their families, friends, and online contacts, if they
did not continue to send the defendant new photos and
videos.  Some victims complied with the extortion demands
and some did not.

Defendant traded some of the images and videos that
he received from the victims with other individuals via the
Kik mobile messaging app, exchanging them typically for
other images and videos of child pornography.

All of the communications, photos, videos and
threatening messages were transmitted over the internet

1    using a facility of interstate commerce:  Namely, a

2    computer or cellular phone connected to the internet.

3         We would show that during April 2018, defendant

4    persuaded, enticed, and coerced an individual with the

5    initials AA, a 15-year-old female living in California, to

6    take and send to the defendant photos and videos of AA

7    engaged in sexually explicit conduct.  These images were

8    transmitted to the defendant via the internet through the

9    Snapchat app on AA's cell phone.

10        Also, during April 2018, defendant sent a series of

11   threatening messages to AA in California via the internet

12   through the Snapchat application.  Defendant threatened to

13   reveal images of AA engaged in sexually explicit conduct to

14   her family and social media friends unless she continued to

15   take and send to him videos and photos of her engaged in

16   sexually explicit conduct.

17        The Government would show that between December

18   2016 and January 2017, the defendant persuaded, enticed and

19   coerced a person with the initials KO, a 15-year-old female

20   living in Illinois, to take and send to the defendant

21   photos and videos of KO engaged in sexually explicit

22   conduct.  These images were transmitted to the defendant

23   via the internet through the Snapchat app on KO's cell

24   phone.

25        From March 11 to April 19 of 2017, the defendant,

on at least four occasions, traded photos and videos of KO
that met the federal definition of child pornography with
unknown individuals on the Kik messaging app.  The photos
and videos had been transported and shipped in interstate
commerce.

The Government would show that in February 2018,
the defendant persuaded, enticed, and coerced an individual
with the initials LL, a 15-year-old female living in
Pennsylvania, to take and send to the defendant photos and
videos of LL engaged in sexually explicit conduct.  These
images were transmitted to defendant via the internet
through the Snapchat app on LL's cell phone.

Also, in February of 2018, the defendant sent a
series of threatening messages to LL in Pennsylvania via
the internet through the Snapchat app.  The defendant
threatened to reveal images of LL engaged in sexually
explicit conduct to her family and social media friends
unless she continued to take and send him videos and photos
of her engaged in sexually explicit conduct.

Between November 2017 and January 2018, the
defendant persuaded, enticed, and coerced an individual
with the initials ZB, a 12-year-old female living in
Illinois, to take and send to the defendant photos and
videos of ZB engaged in sexually explicit conduct.  These
images were transmitted to the defendant via the internet

1    through the Snapchat app on ZB's cell phone.

2         During the month of April 2018, defendant

3    persuaded, enticed, and coerced BA, a 16-year-old female

4    living in Missouri, to take and send to the defendant

5    photos and videos of BA engaged in sexually explicit

6    conduct.  These images were transmitted to the defendant

7    via the internet through the Snapchat app on BA's cell

8    phone.

9         We would show that on or about January 18 of 2018,

10   the defendant sent a series of threatening messages to an

11   individual with the initials AH, a 10-year-old female

12   living in Ohio.  These messages were sent via the internet

13   through the Snapchat messaging app.  In these messages, the

14   defendant threatened to kill AH unless AH sent him photos

15   and videos of AH nude and engaged in sexually explicit

16   conduct.

17        On or about April 19, 2018, defendant sent a series

18   of threatening messages to an individual with the initials

19   CS, a 15-year-old female living in New Jersey.  The

20   messages were sent via the internet through the Snapchat

21   and Kik apps.  Defendant threatened to send partially nude

22   images of CS to her family and social media friends unless

23   she continued to take and send him -- him being the

24   defendant -- videos and photos of her engaged in sexually

25   explicit conduct.  CS reported the messages to her mother,

1    who contacted law enforcement in New Jersey.  This

2    eventually led to the FBI leading the investigation to the

3    defendant.

4         And, finally, we would show that all relevant times

5    and actions and conduct by the defendant took place in St.

6    Clair County, Illinois, and that is within the Southern

7    District of Illinois.

8         Thank you.

9         THE COURT:  Thank you, Mr. Norwood.

10   Q.    (BY THE COURT)  Mr. Breckel, I have also been

11   provided with a document entitled Stipulation of Facts.  Is

12   that your signature on the last page of that document?

13   A.    Yes, Your Honor.

14   Q.    And then in terms of the factual basis in this

15   case, in other words, the evidence that the Government

16   would present against you if this case were to go to trial

17   as Mr. Norwood has just detailed and as is detailed in the

18   written stipulation, do you agree with that factual

19   summary, Mr. Breckel?  In other words, sir, did you do what

20   the Government said you did in this case?

21   A.    Yes, Your Honor.

22   Q.    Then at this time, Mr. Breckel, I want to ask you,

23   sir:  How do you plead to the charges set forth in Counts

24   1, 3, 5, 7, and 8 of the Information that you committed the

25   offense of production of child pornography, guilty or not

1     guilty?

2     A.      Guilty, Your Honor.

3     Q.      And, sir, how do you plead to the charge in Count 4

4     of the Information that you committed the offense of

5     distribution of child pornography, guilty or not guilty?

6     A.      Guilty, Your Honor.

7     Q.      Mr. Breckel, how do you plead to the charges in

8     Counts 2, 6, and 10 of the Information that you committed

9     the offense of interstate communications with the intent to

10    extort, guilty or not guilty?

11    A.      Guilty, Your Honor.

12    Q.      And finally, sir, how do you plead to the charge in

13    Count 9 of the Information that you committed the offense

14    of interstate communications with the intent to extort?

15    A.      Guilty, Your Honor.

16          THE COURT:   The Court does find that a factual

17    basis exists.   That this defendant has knowingly,

18    voluntarily, and competently pled guilty to all counts of

19    the Information.   However, the Court will withhold its

20    acceptance of the plea until it has had an opportunity to

21    review the PSR.

22          So, I'm going to defer my acceptance of the plea

23    until that time.   If I should refuse to accept the binding

24    Plea Agreement, Mr. Breckel, of course, will be allowed to

25    withdraw his guilty plea, and only under those

1    circumstances.

2         Again, the Court will promptly review the PSR.  And

3    if I accept the plea, I will enter an appropriate text

4    order on that.

5         Does everybody understand that?

6         MS. KOESTER:  Yes, Your Honor.

7         MR. NORWOOD:  Yes, Your Honor.

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Okay.  We will go ahead and set

10   sentencing for July 11, 2019, at 10:30 a.m.

11        As I mentioned, Mr. Breckel, Probation will be

12   preparing a written Presentence Investigation Report to

13   assist me in sentencing you and, in this case, to review

14   the plea.  You will have an opportunity to receive that

15   report, to review it and discuss it with your attorney Miss

16   Koester, to make any objections that you see fit.  Included

17   in that report will be the Proposed Conditions of

18   Supervised Release, as well.  You will also have a chance

19   to provide information to be included in that report for my

20   consideration, and to have your attorney present with you

21   at the time.

22        Do you understand that?

23        THE DEFENDANT:  Yes, Your Honor.

24        THE COURT:  Okay.  Anything further, Mr. Norwood?

25        MR. NORWOOD:  Not on behalf of the Government.

1    THE COURT:  Miss Koester, anything further?

2    MS. KOESTER:  No, Your Honor.

3    THE COURT:  Okay.  Thank you.

4    (Off the record.)

5    THE COURT:  Okay.  Apparently, because the old case

6 is going to be dismissed, is there any -- well, I am going

7 to order the defendant detained, that he remains detained,

8 pursuant to the previous orders of detention.

9    Any objection from the Government?

10   MR. NORWOOD:  No, Your Honor.

11   THE COURT:  Miss Koester?

12   MS. KOESTER:  No, Your Honor.

13   THE COURT:  Okay.  Thank you.

14   (Court adjourned at 12:01 p.m.)

15

16

17

18

19

20

21

22

23

24

25

1          <u>REPORTER'S CERTIFICATE</u>

2          I, Christine Dohack LaBuwi, RDR, CRR, Official

3    Court Reporter for the U.S. District Court, Southern

4    District of Illinois, do hereby certify that I reported

5    with mechanical stenography the proceedings contained in

6    pages 1-23; and that the same is a full, true, correct and

7    complete transcript from the record of proceedings in the

8    above-entitled matter.

9

10              DATED this 8th day of May, 2020,

11

12                   s/Christine Dohack LaBuwi, RDR, CRR
                     _____
13                   Christine Dohack LaBuwi, RDR, CRR

14

15

16

17

18

19

20

21

22

23

24

25