UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| V. | ) No. 3:19-cr-30046-SMY-1 |
| | ) |
| JOSHUA P. BRECKEL, | ) |
| | ) |
| Defendant. | ) |

TRANSCRIPT OF SENTENCING

BEFORE THE HONORABLE STACI M. YANDLE
UNITED STATES DISTRICT JUDGE

July 11, 2019

APPEARANCES:

FOR PLAINTIFF:        Christopher R. Hoell, Esq.
                     OFFICE OF THE U.S. ATTORNEY
                     9 Executive Drive, Suite 300
                     Fairview Heights, IL  62208
                     (618) 628-3700
                     Christopher.Hoell@usdoj.gov

FOR DEFENDANT:        Jessica J. Koester, Esq.
                     LAW OFFICE OF JESSICA KOESTER, LLC
                     201 Hillsboro Avenue, Suite G
                     Edwardsville, Illinois  62025
                     (618) 692-4900
                     jessica@koester-law.com

REPORTED BY:          Christine Dohack LaBuwi, RDR, CRR
                     Official Court Reporter
                     301 West Main Street
                     Benton, Illinois  62812
                     (618) 439-7725
                     Christine_Dohack@ilsd.uscourts.gov

Proceedings recorded by mechanical stenography, produced by
computer-aided transcription.

1        (Proceedings began in open court at 10:40 a.m.)

2        THE CLERK:  The Court calls Case No. 19-CR-30046,

3   *United States of America versus Joshua P.  Breckel.*  This

4   matter is called for sentencing.

5        Would the parties please state your presence for

6   the record?

7        MR. HOELL:  Assistant United States Attorney Chris

8   Hoell for the Government, and ready, Your Honor.

9        THE COURT:  Good morning, Mr. Hoell.

10        MR. HOELL:  Good morning.

11        MS. KOESTER:  Jessica Koester here for the

12   defendant Josh Breckel, Your Honor.

13        THE COURT:  Good morning, Miss Koester.

14        Good morning, Mr. Breckel.

15        The record should also reflect United States

16   Probation Officer Kristi Miller is present.

17        I have reviewed all of the sentencing-related

18   filings prior to the hearing this morning, and that

19   includes the Presentence Investigation Report that was

20   filed on June 5th, 2019.

21        I am also aware of and have been notified of, that

22   we will hear testimony from the mother of one of the

23   victims this morning.  I received that notice.  And also,

24   one other victim impact statement filed by the mother of

25   AH.  I have reviewed that, as well.

1          Mr. Hoell, does the Government have any additional

2     filings or documents for my consideration this morning?

3          MR. HOELL:  No, Your Honor.

4          THE COURT:  Miss Koester?

5          MS. KOESTER:  No, Your Honor.

6          THE COURT:  Mr. Hoell, is it -- is it the

7     Government's intent to call Miss Adams at the beginning of

8     your 3553(a) presentation?

9          MR. HOELL:  It is, Your Honor.

10         THE COURT:  Okay.

11         MR. HOELL:  And my intention was, depending on how

12    the Court would like to do it, I don't intend to ask her

13    any questions.  I don't believe Miss Koester does, either.

14    Just have her read her impact statement.

15         THE COURT:  Yeah, I don't intend to put her under

16    oath.  I don't believe it's testimony.  It's the victim

17    impact statement.

18         MS. KOESTER:  That's correct.

19         THE COURT:  Okay.  All right.  Mr. Breckel, would

20    you please stand where you are, sir?

21         Mr. Breckel, Probation did prepare a written

22    Presentence Investigation Report to assist me in sentencing

23    you this morning.  Did you receive a copy of that report?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And did you have an opportunity to

1  review that report and discuss the contents of that report

2  with your attorney Miss Koester?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Included in that report were the

5  Proposed Conditions of Supervised Release.  Did you also

6  have a chance to review and discuss those with your

7  attorney?

8        THE DEFENDANT:  Yes, Your Honor.

9        THE COURT:  Okay.  You can be seated.

10        No objections have been filed to the Presentence

11  Investigation Report.

12        But let me ask, Mr. Hoell, does the Government have

13  any alterations or corrections that need to be made?

14        MR. HOELL:  No, Your Honor.

15        THE COURT:  Miss Koester?

16        MS. KOESTER:  No, Your Honor.

17        THE COURT:  Okay.  I actually did note one small

18  change that needs to be made to the second page of the face

19  sheet.  It indicates Mr. Breckel's age is 20.  I believe

20  his age at this point is 21.

21        PROBATION OFFICE MILLER:  We'll revise that.

22        THE COURT:  Okay.  Thank you.

23        All right.  There then being no objections to the

24  Presentence Investigation Report, I adopt the report and

25  the findings contained in the report and, as a result, I

1    calculate the following guideline range:

2          Counts 1 and 2 are grouped for guideline

3    calculation purposes as Group 1, and that is pursuant to

4    Section 3D1.2(b).

5          As to the base offense level, the guideline for a

6    violation of 18 U.S.C., Section 2251(a), provides a base

7    offense level of 32.

8          Because the offense involved a minor who had

9    attained the age of 12 years but not attained the age of 16

10   years, there's a two-level increase pursuant to Section

11   2G2.1(b)(1)(B) as AA was 15 years of age.

12         There is an additional two-level enhancement or

13   increase pursuant to Section 2G2.1(b)(2)(A) as the offense

14   involved the commission of a sexual act or sexual contact.

15         There is an additional two-level increase pursuant

16   to Section 2G2.1(b)(6)(B)(ii) as the defendant used a

17   social media site to solicit and extort AA to send images

18   or videos of child pornography.

19         So that the adjusted offense level for Group 1 is

20   38.

21         As to Group 2, Counts 3 and 4 are grouped for

22   guideline calculation purposes pursuant to Section

23   3D1.2(c).

24         The guideline for a violation of 18 U.S.C., Section

25   2251(a), provides a base offense level of 32.

1    Because the offense involved a minor who had

2  attained the age of 12 years but not attained the age of 16

3  years, there's a two-level increase pursuant to Section

4  2G2.1(b)(1)(B).  KO was 15 years old.

5    There is an additional two-level increase or

6  enhancement pursuant to Section 2G2.1(b)(2)(A) as the

7  offense involved the commission of a sexual act or sexual

8  contact.

9    There's a two-level enhancement pursuant to Section

10  2G2.1(b)(3) as this defendant shared images of KO with

11  other internet users.

12    There is an additional two-level enhancement as the

13  offense involved the use of a computer or an interactive

14  computer service to solicit participation with a minor in

15  sexually explicit conduct.  In this case, the defendant

16  used a social media site to solicit and extort KO to send

17  images or videos of child pornography, so that enhancement

18  is pursuant to Section 2G2.1(b)(6)(B)(ii).

19    So that the total adjusted offense level for Group

20  2 is 40.

21    As to Group 3, Counts 5 and 6 are grouped for

22  guideline calculation purposes pursuant to Section

23  3D1.2(b).

24    The guideline for a violation of 18 U.S.C., Section

25  2251(a), provides a base offense level of 32.

1          There is a two-level enhancement pursuant to

2   Section 2G2.1(b)(1)(B) as the offense involved a minor who

3   had attained the age of 12 years but not attained the age

4   of 16 years.  LL was 15 years of age.

5          There's an additional two-level enhancement

6   pursuant to Section 2G2.1(b)(2)(A) as the offense involved

7   the commission of a sexual act or sexual contact.

8          There is an additional two-level enhancement

9   pursuant to Section 2G2.1(b)(6)(B)(ii) as the offense

10  involved the use of a computer or an interactive computer

11  service to solicit participation with a minor in sexually

12  explicit conduct.  The defendant used a social media site

13  to solicit and extort LL to send images or videos of child

14  pornography.

15         So that the adjusted level for Group 3 is 38.

16         As to Group 4.  And this deals with Count 7.  The

17  guideline for a violation of 18 U.S.C., Section 2251(a),

18  provides a base offense level of 32.

19         There's a two-level enhancement pursuant to Section

20  2G2.1(b)(1)(B) as the offense involved a minor who had

21  attained the age of 12 years but not attained the age of 16

22  years.  ZB was 12 years of age.

23         There is an additional two-level enhancement

24  pursuant to Section 2G2.1(b)(2)(A) as the offense involved

25  the commission of a sexual act or sexual contact.

1    There's an additional two-level increase pursuant

2    to Section 2G2.1(b)(6)(B)(ii) as the defendant used a

3    social media site to solicit and extort ZB to send images

4    or videos of child pornography.

5    The adjusted offense level then for Group 4 is 38.

6    As to Group 5, which contains Count 8.  The

7    guideline for a violation of 18 U.S.C., Section 2251(a),

8    provides a base offense level of 32.

9    The offense level involved the commission of a

10   sexual act or sexual contact, so that there is a two-level

11   increase pursuant to Section 2G2.1(b)(2)(A).

12   There's an additional two-level enhancement

13   pursuant to Section 2G2.1(b)(6)(ii) as the offense involved

14   the use of a computer or an interactive computer service to

15   solicit participation with a minor in sexually explicit

16   conduct.  In this case, the defendant used a social media

17   site to solicit and extort BA to send images or videos of

18   child pornography.

19   The adjusted offense level for Group 5 is 36.

20   As to Group 6, which contains Count 9.  The

21   guideline for a violation of 18 U.S.C., Section 875(c),

22   provides a base offense level of 12.

23   There's a two-level enhancement pursuant to Section

24   2A6.1(b)(2)(A) as the offense involved more than two

25   threats.  Specifically, the defendant told AH more than one

1    time that he would kill her if she did not send him images

2    or videos of child pornography.

3            The adjusted offense level then for Group 6 is 14.

4            And finally, as to Group 7, which contains Count

5    10.  The guideline for a violation of 18 U.S.C., Section

6    875(d), provides a base offense level of 18, which is the

7    adjusted offense level for Group 7.

8            There's a multiple count adjustment of five units.

9            The combined adjusted offense level pursuant to

10   Section 3D1.4 is 44.

11           There is Chapter Four Enhancement as the defendant

12   engaged in a pattern of activity involving prohibited

13   sexual conduct and, therefore, the defendant is a repeat

14   and dangerous sex offender against minors.  And so,

15   pursuant to Section 4B1.5(b)(1), the applicable offense

16   level is 49.

17           There is a total three-level reduction for this

18   defendant's acceptance of responsibility.  That is pursuant

19   to Sections 3E1.1(a) and 3E1.1(b).

20           Pursuant to Chapter 5.A., Comment Note 2, this is

21   one of those rare instances where the total offense level

22   as calculated is in excess of 43 and, therefore, the

23   offense level will be treated as a level 43.

24           The defendant's criminal history category is one.

25           The guideline range is 180 months to life, with a

1    statutory maximum of 181 years.

2           The guideline range for supervised release:

3           As to Counts 1, 3, 4, 5, 7, and 8 is five years to

4    life;

5           As to Counts 2, 6, and 10, it is one year; and

6           As to Count 9, it is one to three years.

7           The fine range is $50,000 to $250,000.

8           There is a Special Assessment of $1,000, which is

9    $100 per count.

10          In addition, there is the potential of the Special

11   Assessment in 18 U.S.C., Section 3013, in the amount of

12   $5,000 on any nonindigent person or entity convicted of

13   sexual exploitation and other abuse of children.

14          However, in this case the Court finds that the

15   defendant appears to be indigent and does not have the

16   ability to pay the 5,000-dollar Special Assessment.

17          Forfeiture.  There is also forfeiture, and I

18   believe the Court has entered a preliminary order of

19   forfeiture in this case with respect to:

20          A black Alienware laptop computer, Serial No.

21   8Z16P72, Manufacturer No. 8505-S6005;

22          A black WD external hard drive, Serial No.

23   WX81D1734386;

24          A silver iPhone 7 having a phone number of

25   618-960-7572;

1          A black Hewlett Packard desktop computer, Serial

2     No. 4CE1370OYL;

3          A grey Toshiba LG5S laptop computer, Serial No.

4     1BO388SOW;

5          A purple Memorex flash drive;

6          A silver Lexar flash drive;

7          A black Lexar flash drive; and

8          A black Sandisk flash drive.

9          Mr. Hoell, does the Government have any objections

10    to my calculations?

11         MR. HOELL:  No, Your Honor.

12         THE COURT:  Miss Koester?

13         MS. KOESTER:  No, Your Honor.

14         THE COURT:  All right.  In terms of departures.

15    While they may be available, I do not intend to depart for

16    any reason that's noted in the guidelines manual.

17         In terms of Section 3553(a) factors.  I do intend

18    to address the 3553(a) factors in this case,

19    notwithstanding the 11(c)(1)(C) Plea Agreement.

20         I think I'm required to address those and to

21    consider those factors set forth at 18 U.S.C., Section

22    3553(a) -- I was required to address those and consider

23    them in deciding whether or not to accept that plea -- and

24    in order to ensure that I impose a sentence which is

25    sufficient, but not greater than necessary, to comply with

1    the purposes of sentencing.

2         The purposes include the need for the sentence to

3    reflect the seriousness of the crime, to promote respect

4    for the law and to provide just punishment for the offense.

5    The sentence must also deter criminal conduct, protect the

6    public from future crimes by this defendant, and promote

7    rehabilitation.  In addition to the guidelines and policy

8    statements, I must also consider:

9         The nature and circumstances of the offense;

10        The history and characteristics of this defendant;

11        The need to avoid unwarranted sentence disparities

12   among similarly-situated defendants; and

13        The types of sentences available.

14        Mr. Hoell, the Government would like to make a

15   presentation as to the statutory factors and, as I

16   understand it, you want to begin with a victim impact

17   statement?

18        MR. HOELL:  That's correct.  At this time, the

19   Government would call Kathy Adams to give a victim impact

20   statement.

21        MS. ADAMS:  Dear Judge Yandle.  I am the mother of

22   BA.  I am here on behalf of our whole family to express to

23   the Court that this damage of this crime has had on our

24   entire family.  Our daughter is a beautiful young,

25   intelligent lady.  She has a very bright future ahead of

1  her.  She is wanting to be an RN in a children's hospital

2  after high school.  She was supposed to leave this summer

3  for Basic training.  Then come back from Basic, have her

4  senior year of high school and graduate, and immediately

5  leave for AIT.  This has changed everything.  She has

6  became very withdrawn, depressed.  And as her mother, it's

7  very upsetting.

8         She plays basketball, softball, cheer, and is also

9  very active in Student Council and anything that has to do

10  with school.  Right now, she has no interest in anything.

11  We live in a very small town and our whole community knows.

12  She hardly ever talks to any of her friends anymore and

13  seems very distant.  She's very nervous about going back to

14  school to finish her senior year.

15         Her father and I have recently separated over this

16  case, and it has completely changed everybody's life.

17         Her father and I were supposed to go to Florida for

18  our anniversary; never been in an airplane or seen the

19  ocean.  The night before we leave, the FBI shows up at my

20  work.  We have to be at the FBI Headquarters in three days.

21  So, a trip from a week went to two days; shortened our

22  trip.

23         I would like to thank everybody in law enforcement

24  and the people of this court for everything that you guys

25  do for cases like this.

1          Thank you.

2          THE COURT:  Thank you, ma'am.

3          MS. ADAMS:  Thank you.

4          THE COURT:  Mr. Hoell.

5          MR. HOELL:  Your Honor.

6          As the Court is aware, there is a Plea Agreement in

7     this case.  Just to quickly summarize the agreement between

8     the parties, the suggested sentence to the Court is a total

9     of 35 years of imprisonment, or 420 months, to be followed

10    by a lifetime of supervised release.

11         That specifically broke down to be:

12         30 years' imprisonment on Counts 1, 3, 5, and 7,

13    the production of child pornography counts, to run

14    concurrent; and

15         Five years of imprisonment on Count 2, distribution

16    of child pornography, to run consecutive to the 30 years on

17    Counts 1, 3, 5, 7, and 8;

18         Two years of imprisonment on Counts 2, 6, and 10,

19    which is extortion with the threat to damage or injure

20    reputation, to run concurrent to all other counts; and

21         Finally, five years of imprisonment on Count 9,

22    which was extortion with threats to kill, to run concurrent

23    to all other counts.

24         From the Government's perspective, this sentence is

25    appropriate; it's sufficient, but not greater than

1    necessary; and it's one that is driven mainly by the need

2    to protect the public, to reflect the seriousness of the

3    offense, and to provide just punishment.

4         This case basically covers approximately a two and

5    a half year period, from 2016 until the defendant's arrest

6    in June of 2018.  During that time, the defendant

7    contacted, sought out, and obtained child pornography from

8    dozens of girls across the United States and the globe via

9    social media, utilizing fake accounts and profiles on a

10   variety of platforms.

11        Altogether, there is approximately 25 minor victims

12   and 20 adult victims.  The adult victims being people who

13   were extorted but who, obviously, could not produce child

14   pornography because they were adults at the time of the

15   offense.  There was many more than that that the defendant

16   solicited, but who did not provide him with images.  These

17   victims ranged in age from the youngest victim AH, who is

18   charged in Count 9, at 10 years old, up to approximately

19   23.

20        And the defendant would use any method that worked.

21   Sometimes, he just offered to pay victims money to buy nude

22   photographs, and that worked.  Other times, he would

23   pretend to be in an online romantic relationship with them.

24   And as the Court probably noted in the PSR in discussions

25   about other uncharged victims, there is communications from

1    victims saying they loved the defendant.  They believed

2    they were in a relationship with the defendant.  Or other

3    times by threats, as with AH, for example.

4            When asking for photographs, the defendant would

5    often request that the victim include their face in the

6    images taken that were self-produced, and sometimes that

7    they would hold up the number three so he could verify it

8    was a real photo.  This also probably intentionally made

9    them easier to blackmail later when they eventually would

10   balk at or refuse to send specifically-requested photos or

11   videos or more photos or videos.  Then -- not in all cases,

12   but often the defendant would threaten to blackmail the --

13   or would blackmail the victims by saying that he would send

14   the images he already had of them, often showing their

15   face, to their family, their friends, their social media

16   contacts, their social media friends.  In some instances,

17   he was able to discover the addresses of these victims such

18   as, again, AH, who, hers was a bit unique because she was

19   contacted as she was trying to buy slime that some preteens

20   and children play with.  And the defendant, straight out of

21   the gate, threatened her that he would track her down, hunt

22   her down and kill her if she did not send naked

23   photographs.

24           Similar to comments he would make in terms of

25   threatening reputation to people such as victim AA, in

1    Counts 1 and 2, who was told her life would be ruined in a

2    second if she did not send more images.

3         In at least one instance of an uncharged victim,

4    the defendant followed through with his threats and

5    contacted the mother of a victim to reveal that her

6    daughter had been sending nude photographs to him.

7         Many victims, again, such as 10-year-old AH, were

8    given a number of points to work off.  A video might be

9    worth five points; a photograph, two.  And the defendant

10   would direct them to -- as things to say in the video,

11   specific things to do.  The Government's not going to go

12   into the graphic nature of those communications, but it's

13   contained in the PSR.  But just an example would be things

14   such as while they were touching themselves, to call him

15   master, and to use graphic language to describe sexual

16   acts.

17        Some victims, most victims, were strangers to the

18   defendant.  But KO, who is the victim of Counts 3 and 4,

19   production and distribution, we believe was targeted

20   because she was friends with the defendant's younger

21   sister.  She had been to the defendant's house.  She knew

22   him.  She did not know until it was told to her by the FBI

23   that the individual she was -- had sent photos and videos

24   to was in fact Joshua Breckel.  He was using a fake

25   Facebook account and then other social media accounts.  But

1  we don't believe it's a coincidence that his sister's best

2  friend happened to be one of the girls who he targeted.

3  Thirty-five years is a just punishment for this

4  crime.  It's a serious crime.  The defendant preyed on

5  dozens of young girls and young women over this two and a

6  half year time period.  As mentioned in the victim impact

7  statement submitted to the Court and in the one that the

8  Court just heard, and is just evident when dealing with

9  victims of this age, significant emotional damage was done

10  that may affect some of these victims for a lifetime, that

11  may require therapy down the road, that may damage future

12  relationships.  Their images were traded by the defendant

13  like baseball cards.

14  These -- as the Court is well aware from other

15  child pornography cases, once images are traded or hit the

16  internet, there's no way to take them down.  And that's a

17  conversation I've had to have multiple times with victims

18  and their families, is that we, we don't have the power to

19  take these images down.  And I can say this case has led to

20  investigations into at least ten other individuals who

21  received images or traded images with the defendant.

22  He created new identified series of child

23  pornography that we submitted to the National Center for

24  Missing and Exploited Children.  Eventually, we anticipate

25  we will get notifications from other cases when they arrest

1    an individual who has images that Mr. Breckel created or

2    were -- instruct the victims to create and then traded to

3    other people.

4         And he's not -- while he has accepted

5    responsibility, there hasn't been much of a showing of

6    remorse.

7         Finally, this sentence takes into account the fact

8    that the defendant is a danger to the public, and this is

9    what is mainly driving the Government's search of 35 years,

10   is, it's 35 years he'll be off the streets.  Obviously,

11   he's driven by some compulsion to do what he does.  But the

12   fact that he was picked up and interviewed in May of 2018,

13   at that time his computer was seized, his phone was seized,

14   he showed images of the child pornography to agents, so he

15   knew at that time he was under investigation and most

16   likely was in trouble.  When a later search warrant was

17   executed on his home and some additional electronic devices

18   were found, the forensic review revealed that between his

19   arrest and Indictment in July of 2018, and the time when he

20   had been arrested and released in May of 2018, the

21   defendant was still communicating with victims he had

22   already established a relationship with, and also searching

23   for new victims in that approximately six-week time period.

24        As well during that time period, something that's

25   mentioned significantly in the PSR, he made contact while

1    pretending to be a 17-year-old female.  The defendant,

2    using a photograph of one of his victims, made contact with

3    an individual by the name of Michael Duck, who went by the

4    name Ducky Boy, in Pennsylvania.  And while pretending to

5    be the 17-year-old female and under the guise of promising

6    Mr. Duck nude photographs of this fictitious 17-year-old

7    female when his phone was fixed, he instructed and got

8    Michael Duck to take video of himself molesting Michael

9    Duck's 3-year-old sister and to send this to the defendant.

10   He gave him instructions of, *try to bribe her first and*

11   *force her if she doesn't take it*.  We were able to track

12   down Michael Duck in Pennsylvania.  He was initially

13   charged as a juvenile but then, based upon items that were

14   found on his computer, he's now an adult at 18, he's been

15   charged in adult court, state court, with multiple felony

16   charges related to child pornography.

17         So, those are the things driving it from the

18   Government's point of view.  But this sentence also does

19   take into account that we had a defendant who, at the

20   beginning of this time period, was himself approximately 18

21   years old.  He was 20 when he was arrested.  He's now 21 as

22   he sits here.  He was in college, was working, and had no

23   criminal history.

24         So, that is why the Government feels that this was

25   a well-researched and well-negotiated plea with the

1  defense.  It took into account the very serious nature of

2  these crimes, the harm to the victims, the danger to the

3  public, but also the mitigating circumstances of the

4  defendant's age and lack of a criminal history.

5      It is a sentence that is sufficient, but not

6  greater than necessary, to accomplish the goals of 3553(a).

7  It's going to take the defendant off the streets for 35

8  years, which is almost twice as long as he's been on Earth.

9  It's a just punishment for this crime.  And then he will be

10  supervised for life once he gets out.

11      He'll have to register as a sex offender and will

12  have a probation officer keeping tabs on his activities,

13  his whereabouts and, hopefully, his computer and internet

14  usage.

15      Unless the Court has any questions, that would wrap

16  up the Government's argument.

17      THE COURT:  Thank you, Mr. Hoell.

18      MR. HOELL:  Thank you.

19      THE COURT:  Miss Koester?

20      MS. KOESTER:  Thank you.

21      If the Court would allow, I would like to call

22  Vickie Breckel to make a statement to the Court?

23      THE COURT:  Call who?

24      MS. KOESTER:  Vickie Breckel.  Mr. Breckel's

25  mother.

1          THE COURT:  We didn't have any notice of that.  Mr.

2     Hoell, does the Government have any objection to that?

3          MR. HOELL:  I was notified just prior to the

4     hearing by Miss Koester, Your Honor, and she indicated it

5     would pretty much be, I think, just an impact -- not an

6     impact statement, I guess, but a statement of whatever you

7     want to call it about her son.

8          Given what I understood to be the general details

9     of that statement, I don't have any objection or probably

10    any intention to ask any questions.

11         THE COURT:  Given the lack of objection from the

12    Government, I will allow it.  But I will just remind

13    counsel that, for several reasons, notice is typically

14    required.

15         MS. KOESTER:  Yes, Your Honor.

16         Call Vickie Breckel, please, to the stand.

17         MS. KOESTER:  Do you want her on the stand or do

18    you want --

19         THE COURT:  Are you calling her as a witness or --

20    I'm not allowing you to call her as a witness.

21         MS. KOESTER:  Okay.  That's fine.

22         THE COURT:  Is she just going to read a statement?

23         MS. KOESTER:  That's all --

24         THE COURT:  She can read a statement.

25         MS. KOESTER:  I didn't know if you wanted her under

1    oath.

2         THE COURT:  No.  She's doesn't need to be under

3    oath.

4         MS. KOESTER:  Okay.

5         THE COURT:  Go ahead, ma'am.

6         MS. BRECKEL:  Thank you, Your Honor.  I appreciate

7    it.

8         My name is Vickie Breckel.  I'm Joshua's mother.

9    Over the past year, I have heard allegations of deeply

10   disturbing conduct and have been heartbroken over and over.

11   I know and I want all of you to know that this is not --

12   this is far from the sum total of who my son is.

13        Josh is my oldest child and my only son.  He has

14   always been very smart, sweet, shy, compliant and loving

15   child.  He has also been very introverted, socially awkward

16   and socially immature.  At home, with family and close

17   friends, he is comfortable and interactive.  Away from

18   home, he is extremely introverted, quiet, and struggles to

19   relate to people.  He has also stuck with his very small

20   circle of close friends.

21        From a young age, much of his interaction has been

22   via technology.  His dad and I encouraged him to

23   participate in extracurricular activities, which he did.

24   However, when his dad died unexpectedly almost six years

25   ago, Josh began to do less and less outside of the home.

His three close friends and he would gather at someone's house and play video games.  I never worried excessively about Joshua.  He was a kid who got -- who never got into trouble, always got good grades, and did what I asked of him.

When his dad died, his grades began to falter.  I thought he was being a teenager and being lazy.  In hindsight, I see that he was depressed and never fully grieved the sudden loss of his father; he was more traumatized than I realized.

Needless to say, I was shocked and devastated when the police contacted me over a year ago.  I have failed as a mother and a social worker.  I am still not sure how I missed the signs that my son was suffering with mental health issues.  Had I recognized that, we would not be here today.  I would have been able to get interventions in place for him.  We were all grieving and trying to figure out our new life and I missed something.  I will always have the guilt of missing this for the sake of everyone hurt in this situation, and I am very sorry.

As I said before, Josh has always communicated best with fears through technology.  He has played video games his whole life, and I believe that he became desensitized somewhat to the reality of actual live people being on the other end of computer communication.  He did not have

1  social skills to interact socially, especially with girls.

2  As many people do, he said things via technology that I

3  believe he never would have said in person.

4       The hardest part of this is knowing that he could

5  be saved and has so much potential and positive

6  contribution to offer.  Although he was 18 and 19, he -- in

7  many ways, he was still a child.  He had not fully

8  developed socially or emotionally, and his executive

9  functioning was flawed.

10       I fully understand that behavior has consequences.

11  I am a social worker and have worked with children for most

12  of my career.  I have worked in the education field for the

13  past 23 years.  I also have an understanding of deterrence

14  and the benefits of restorative practices.  I know that my

15  son is remorseful.  I also know that he needs mental health

16  services.  I know that, with help, he could be a productive

17  member of society.

18       Josh has a strong support system of extended family

19  and many lifelong family friends.  He will never be alone.

20  I would never minimize or excuse the things that he has

21  done.  I will not abandon him.  We will be by his side

22  throughout.  He will learn from his mistakes and make

23  amends.  I wish that he could have a chance to prove that.

24       Thank you.

25       THE COURT:  Thank you, Miss Breckel.

1        Miss Koester.

2        MS. BRECKEL:  I'm sorry, Your Honor.  Yes, ma'am?

3        THE COURT:  No.  I said thank you, Miss Breckel.

4        MS. BRECKEL: Okay.

5        MS. KOESTER:  I think this is one of the most

6   difficult cases either Mr. Hoell or I have taken part in,

7   in our legal careers thus far.  And when you look at the

8   sentencing factors in 3553, it's a difficult one to get

9   through.

10        When you look at the nature and circumstances of

11  the offense here, there were a lot of girls who were

12  negatively impacted and suffered trauma because of Josh

13  Breckel's actions.  But Josh knows that and he does feel

14  remorse for it.

15        And when you look at the history and

16  characteristics of Josh, his mom explained it very well.

17  He got lost in the world of technology, I think, in trying

18  to cope with his dad's death at a very young age.  That

19  doesn't excuse his behavior.  That doesn't make the trauma

20  suffered by these girls any less.  But it helps us to

21  understand how this all got started.

22        When you are dealing with a teenager who has,

23  himself, suffered trauma in the sudden loss of his father

24  and who has since been diagnosed with depression and is

25  being treated for depression, when that goes untreated as

1  he is dealing with trauma in this situation, it manifested

2  itself in a very tragic way.

3  You know, as teenagers, our brains aren't fully

4  developed.  We have poor impulse control.  And that led

5  Josh Breckel down a very dark path.  However, he wants

6  help.  He knows he needs help.  And unlike many of the

7  other sexual predatory cases that I have dealt with, I

8  think he can be helped.  And acknowledging that he needs

9  help and that he wants help is a huge step in that.

10  Because, as we have all seen the studies, if the offender

11  doesn't want to get better, treatment is pointless.

12  This sentence of 35 years is significant.  It's, as

13  Mr. Hoell said, nearly twice the amount of time that he has

14  been on this Earth.  By the time he gets out, well more

15  than half of his life is going to have been incarcerated.

16  But with the guidance offered by the Bureau of Prisons and

17  the treatment he can receive in there, I believe that when

18  he gets out, he can be a productive member of society.

19  Thirty-five years is a huge punishment.  It's a

20  very long time.  When you ask a 20-year-old to comprehend

21  that -- 21, now -- to comprehend that amount of time,

22  that's -- it was a difficult conversation to have with my

23  client.  But after lengthy conversations, he gets it.  He

24  accepts what he's done.  He knows that this is a just

25  punishment; that he needs to be away from the public to get

1    better, and as a punishment.  And he fully intends, when he

2    gets out, to make himself a productive member of society.

3         The lifetime of supervised release that we have

4    agreed to in the Plea Agreement continues to protect the

5    public, as the Government is concerned about, even upon his

6    release.  He will have to register as a sex offender for

7    the rest of his life.

8         We believe that the 35 years is both sufficient in

9    terms of deterrence as well to protect the public.  That's

10   plenty of time, obviously, for the defendant to get

11   treatment in the Bureau of Prisons.

12        We also note that while the guideline range is life

13   under the determination by the Presentence Investigation

14   Report, that it is important to note that he didn't have a

15   prior criminal history.  He was going to school to better

16   himself.  He had obtained an Associate's Degree.  He was

17   working.  By all accounts, he was helpful to members of his

18   family and those in need, and we believe that he can

19   continue the positive traits of that upon his release.

20        We just ask the Court to continue to bind itself by

21   the Plea Agreement and to sentence Mr. Breckel to the 35

22   years and the lifetime of supervised release.

23        THE COURT:  Thank you, Miss Koester.

24        I'm going to ask if your client would join you at

25   the podium now.

1          Mr. Breckel, you are entitled and you have an

2     opportunity to make what they call an allocution, which is,

3     you have a right to address the Court with anything that

4     you would like for me to consider, and before I impose

5     sentence in this case.  You are not required to make a

6     statement, but you have a right to make a statement.

7          Is there anything that you'd like to say today?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  I'm listening.

10          THE DEFENDANT:  I would like to apologize to all my

11     victims and victims' families that have been affected by my

12     crimes.  I hope that all my victims are able to get the

13     help that they need to live full lives.

14          I realize that I have a problem.  I am looking

15     forward to getting the help I need so that I may be a

16     productive member of society upon the completion of my

17     sentence.

18          I would also like to apologize to my family for

19     putting them through this process.

20          THE COURT:  Okay.  I think I'm stating the obvious,

21     this case presents a tragedy and it is a tragic situation

22     for everybody involved.  Everybody involved.

23          Miss Koester, you indicated that this is probably

24     one of the most difficult cases that you have been involved

25     in, and you suspect the same was for Mr. Hoell.  I can tell

1  you, it is certainly the case for me.

2        And let me just start with this.  You know, the

3  seriousness of the crime and the nature and circumstances

4  of the offense are one of the factors and one of the goals

5  of sentencing that I have to consider and that I had to

6  consider when I decided to accept the recommended Plea

7  Agreement between the parties.

8        And one of the things that I have spent a lot of

9  time thinking about, we have heard and we are familiar with

10  the specific details of Mr. Breckel's crimes; what he did

11  and how he did it.  But I think that there's -- I have been

12  giving a lot of thought to the nature and circumstances of

13  the offense in terms of the larger picture, in terms of the

14  real need that we can all agree on for general deterrence.

15  Because I think what we are looking at is a confluence of

16  certain things here.  Number one, in the PSR, paragraph

17  132, there is a very brief summary of Mr. Breckel's mental

18  and emotional health.  But I am confident that that brief

19  summary does not present a complete or accurate picture.

20  And I'm not saying that it's not complete because of any

21  failing by Probation or by the attorneys or by anybody in

22  this case.  I think it's incomplete, and we can tell from

23  Miss Breckel's statement, because it was not known.

24        I cannot fathom a situation under which anyone

25  could commit the acts that you committed, Mr. Breckel, in

1   the absence of some serious mental and emotional pathology.

2   And so that, combined with your age -- you are now 21 years

3   old -- during the time, you were 18 and 19 years old, there

4   is no doubt in my mind that you did not even have the

5   maturity level of an 18- or 19-year-old.  And these are not

6   excuses.  None of it excuses your conduct or excuses you

7   from the consequences, but I think everybody in this room

8   would agree that, today, we need to try to understand how

9   we got here.  And so I do think it's a combination of that.

10          Miss Breckel described her son as being socially

11  awkward and introverted.  We have seen examples of how

12  those things can manifest themselves.  So, I do think that

13  there are mitigating factors that apply specifically to Mr.

14  Breckel, his age, his emotional and mental status, the fact

15  that he had no previous criminal history, that warrant the

16  consideration that was given by the attorneys and by myself

17  in the final sentence in this case.

18          But there's a larger picture of nature and

19  circumstances that, as a society, we're going to have to

20  figure out how to deal with.  And that is, we live in a

21  different world than the three of us grew up in, and that

22  many people sitting in this courtroom grew up in.  We now

23  live in a world of online and anonymous relationships, of

24  cyber intimidation and bullying becoming the norm.  It's a

25  part of normal culture for our society and certainly for

1    this young generation of an ability to take and share

2    digital photos without any limitation.  And I think it is

3    safe to say that we are living in a new world and, and with

4    this -- particularly with younger people, the values aren't

5    the same.  They don't look at things the same way.  They

6    shrug off cyberbullying, intimidation, sharing photographs,

7    that we would never think of.  But that is the world we are

8    living in.  And the dangerous part of that is that, plus

9    where we are from a technological standpoint, the sad thing

10   and what scares me is, I don't think this is going to

11   present an exceptional circumstance.

12        And so, it's going to take law enforcement and

13   everybody doing what they are doing, but I think that's

14   part of the nature and circumstances that we have to

15   consider, and that the goal of sentencing of general

16   deterrence is extremely important in cases like this.

17        You know, for instance, and this is not -- you

18   know, this wasn't the situation particularly with these

19   victims because they were subject to threats and

20   intimidation, but Mr. Hoell and I have sat on cases where

21   that wasn't necessarily the case.  And that we have had and

22   seen young victims who provided nude photographs to

23   anonymous folks without even thinking, didn't even realize

24   that technically that could be subjected, themselves, to

25   prosecution for the distribution of child pornography.

1    It's because they don't think like that.  And so, I think

2    all of those things have come together here and have

3    merited the consideration.

4         The other thing I want to address is, when I say

5    the tragedy has hit everybody from every angle, I am

6    totally mindful of the impact it has had on the victims

7    here, on the minors, the young ladies and their families.

8         And, Miss Adams -- I mean, if you didn't hear it

9    from Miss Adams, I mean -- and it's unfortunate.  It has

10   not only impacted and been destructive to her daughter but

11   her entire family.  And again, I think there needs to be an

12   appreciation for that type of damage and the impact that

13   these crimes have.

14        Miss Adams, I do not doubt, however, that if your

15   daughter has one-tenth of the strength that I know exists

16   in you and that I saw today, she will survive this.  And,

17   please, let her know that she can and she will survive

18   this.  She may have been victimized by Mr. Breckel, but she

19   doesn't have to live as a victim.  And I also hope for you

20   and your family that you will be able to move forward from

21   this.

22        So, in consideration of all of that, and the fact

23   that Mr. Breckel will now for the first time in his life

24   actually have access to and be evaluated and, I believe,

25   appropriately treated for his mental health and emotional

1   issues.  And that one thing we know is, he will not be out

2   on the street until that happens.  And that the primary

3   purpose to be served here is protection of the public until

4   such time as he can get the treatment he needs so he no

5   longer presents that risk.  The protection of the public

6   will be served by what, by any stretch of the imagination,

7   is a substantial sentence of 35 years.

8        It's particularly substantial when you think about

9   the period of 35 years that we are talking about.  It's not

10  just 35 years.  Mr. Breckel will be incarcerated for what

11  is effectively his entire adult life, but he will be

12  getting treatment or have access to treatment.

13       And, Mr. Breckel, it may not seem like it when you

14  are standing there right now as a 21-year-old, but if you

15  commit yourself to the treatment, if you are as remorseful

16  as I believe you are, when you get out, you can still make

17  a positive contribution to this society.  And that's, I

18  think, what we can hope for.

19       So, considering all of that, and that is why I

20  accepted the parties' proposed sentence, and I believe that

21  the sentence of what is 420 months, what actually is 35

22  years, is appropriate.

23       And so having considered all of the information in

24  the Presentence Investigation Report, including guideline

25  computations and factors set forth in 18 U.S.C., Section

1  3553(a), and pursuant to the Sentencing Reform Act of 1984,

2  it is the judgment of the Court that the defendant Joshua

3  P.  Breckel is hereby committed to the custody of the

4  Bureau of Prisons to be imprisoned for:

5          A term of 360 months on each of Counts 1, 3, 5, 7,

6  and 8, to run concurrent to each other;

7          A term of 60 months on Count 4, to run consecutive

8  to the sentence imposed for Counts 1, 3, 5, 7, and 8;

9          24 months on each of Counts 2, 6, and 10, to run

10  concurrently; and

11          A term of 60 months on Count 9, to run concurrent

12  to all other counts, for a total term of 420 months, 35

13  years.

14          Further, it is ordered that the defendant shall pay

15  to the United States a Special Assessment of $100 for each

16  count, which totals $1,000.  The Special Assessment is

17  payable through the Clerk of the United States District

18  Court.

19          The defendant appears to be indigent and does not

20  have the ability to pay the additional 5,000-dollar Special

21  Assessment pursuant to 18 U.S.C., Section 3014.

22          It is further ordered that the defendant shall pay

23  to the United States a fine of $500, which is $50 on each

24  count.  That is also payable through the Clerk of the

25  United States District Court and that fine is due

immediately.

The defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence or mailing address until paid in full.

And having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be paid in equal monthly installments of $25 or 10 percent of his net monthly income, whichever is greater.

The defendant shall pay any financial penalty that is imposed by this judgment and that remains unpaid at the commencement of the term of supervised release.

Supervised release, obviously, will provide a period -- a much needed period of time to monitor this defendant's reintegration into the community, to make sure that he is and becomes gainfully employed, that he complies with all conditions as directed by this Court, including conditions with respect to restrictions from electronics and treatment conditions.  That that would also serve to provide deterrence to future criminal conduct and to protect the public from further crimes by this defendant.

Again, pursuant to the Plea Agreement and the recommendation from both parties, and for all the reasons and stated reasons as in the factors that apply in this case, a supervised release term of life is warranted.

And, therefore, upon release from imprisonment, the

1  defendant shall placed on supervised release for life.

2      This term consists of a term of life on each of

3  Counts 1, 3, 4, 5, 7, and 8; a supervised release term of

4  one year on each of Counts 2, 6, and 10; and, a term of

5  three years on Count 9, all of these terms to run

6  concurrently.

7      Within 72 hours of release from the custody of the

8  Bureau of Prisons, this defendant shall report in person to

9  the United States Probation Office in the district to which

10  he is released.

11      And while on supervision, the defendant shall be

12  subject to and be required to comply with the conditions of

13  supervision as ordered by the Court.  That includes the

14  Mandatory, Administrative, and Special conditions that are

15  detailed in the Presentence Investigation Report.

16      I have been provided, Mr. Breckel, with a document

17  entitled Waiver of the Reading of Special Conditions in

18  Open Court.  Is that your signature, sir, on the last page

19  of that document?

20      THE DEFENDANT:  Yes, Your Honor.

21      THE COURT:  And did you have a sufficient

22  opportunity to discuss that waiver with Miss Koester before

23  you signed it?

24      THE DEFENDANT:  Yes, Your Honor.

25      THE COURT:  Then the record should reflect that Mr.

1    Breckel in fact waives his right to have me read the

2    Special conditions of supervision in open court.

3         In terms of forfeiture.  In addition to the

4    sentence imposed, the defendant shall forfeit interest in

5    the following property to the United States:

6         A black Alienware laptop computer, Serial No.

7    8Z16P72, Manufacturer No. 8505-S6005;

8         A black WD external hard drive, Serial No.

9    WX81D1734386;

10        A silver iPhone 7 having phone number 618-960-7572;

11        A black Hewlett Packard desktop computer, Serial

12   No. 4CE1370OYL;

13        A grey Toshiba LG5S laptop computer, Serial No.

14   1B0388SOW;

15        A purple Memorex flash drive;

16        A silver Lexar flash drive;

17        A black Lexar flash drive; and

18        A black Sandisk flash drive.

19        Mr. Hoell, does the Government request any further

20   elaboration of my consideration of the statutory factors in

21   this case?

22        MR. HOELL:  No, Your Honor.

23        THE COURT:  Miss Koester?

24        MS. KOESTER:  No, Your Honor.

25        THE COURT:  Miss Koester, are you satisfied that I

1   have addressed your main argument in mitigation?

2          MS. KOESTER:   Yes, Your Honor.

3          THE COURT:   Mr. Breckel, I do need to advise you

4   that you have a right to appeal your convictions if you

5   believe that your guilty plea was somehow unlawful or

6   involuntary, or if there is some other fundamental defect

7   in the proceedings that was not waived by your guilty plea.

8          You also have a statutory right to appeal the

9   sentence itself if you believe the sentence I just imposed

10  is contrary to the law.   However, a defendant may waive

11  those rights as part of a Plea Agreement, and you have in

12  fact entered into a Plea Agreement, a binding Plea

13  Agreement in fact, that waives all or some of your rights

14  to appeal the sentence itself.   These waivers are generally

15  enforceable.   But if for some reason you believe the waiver

16  is unenforceable as it relates to you, you can present that

17  theory to the appellate court by way of an appeal.

18         With few exceptions, if you intend to appeal, your

19  Notice of Appeal must be filed within 14 days after the

20  entry of Judgment in this case.

21         And if you cannot afford the services of an

22  attorney to handle your appeal, one will be appointed for

23  you.

24         If you cannot afford it, a transcript of the record

25  in the case will be prepared for appeal at the Government's

1    expense.

2          And if you so request, the Clerk of Court will

3    prepare and file a Notice of Appeal on your behalf.

4          You understand that, sir?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Is there anything further, Mr. Hoell?

7          MR. HOELL:  No, Your Honor.

8          THE COURT:  Miss Koester?

9          MS. KOESTER:  No, Your Honor.

10         THE COURT:  Let me make one other note for the

11   record.

12         I do believe that the support that Mr. Breckel has

13   from his family, which is obvious and is ongoing and is

14   necessary not just for him but for them, and for that

15   reason I am going to recommend to the Bureau of Prisons

16   that they consider placing Mr. Breckel, I believe, at

17   Marion or as geographically close to the Southern District

18   of Illinois as possible, of course, giving priority to the

19   facility that has the necessary treatment services and

20   programs that he will need.  But I think it's important

21   that they place him as geographically close to this

22   district as possible so that he can continue to receive the

23   supporting relationship from his family.

24         There being nothing further then, the defendant is

25   remanded to the custody of the Attorney General and this

1    Court is in recess.

2            MS. KOESTER:   Thank you.

3            (Court adjourned at 11:43 a.m.)

4

5

6

7

8

9

10

11

12

13                    REPORTER'S CERTIFICATE

14        I, Christine Dohack LaBuwi, RDR, CRR, Official

15   Court Reporter for the U.S. District Court, Southern

16   District of Illinois, do hereby certify that I reported

17   with mechanical stenography the proceedings contained in

18   pages 1-41; and that the same is a full, true, correct and

19   complete transcript from the record of proceedings in the

20   above-entitled matter.

21

22        DATED this 8th day of May, 2020,

23

24             s/Christine Dohack LaBuwi, RDR, CRR
             _____
25             Christine Dohack LaBuwi, RDR, CRR